BOUTELL *v.* MICHIGAN CENTRAL RAILROAD CO.

RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE. One who was struck by the engine of a passenger train as he stepped upon the track at a crossing was guilty of contributory negligence, precluding a recovery for the injury, where, though the gates were not lowered nor the engine bell rung, he knew that the train had stopped at the depot near by, and was likely to start at any moment, and in fact heard the noise of the engine, but, supposing it to come from another engine some distance away, hurried on to meet a friend, without looking to see whether the train was approaching.

Error to Washtenaw; Kinne, J. Submitted April 9, 1903. (Docket No. 26.) Decided June 23, 1903.

Case by Hiram Boutell against the Michigan Central Railroad Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

In the city of Ypsilanti, River street runs north and south, and Cross street east and west, the two intersecting where the tracks of the defendant cross them. Its road-bed runs northwesterly and southeasterly. The passenger depot is located westerly of Cross street, but at what distance does not appear. A power house is located on the south side of Cross street and east of River street. On the west side of River street and north of Cross street was located the gatekeeper's house. Defendant had three gates, one on Cross street west of its tracks, and two on River street, located respectively north and south of its tracks. At the place where plaintiff was injured, there were four tracks,—two main tracks and two side tracks. The situation can be better understood from the accompanying diagram, prepared by counsel for defendant as a part of their argument. While plaintiff's counsel insists that it is not strictly accurate, it is sufficiently so for the purpose intended.

Plaintiff was employed as fireman at the power house, coming off duty about 6 o'clock in the evening. He was required to lock the door of the power house when leaving, walk to the gatekeeper's house, and hang the key up inside. He did this on the occasion in question. One of defendant's heavy and regular fast passenger trains had come in from the west, on the south main track, and stopped with its engine standing west of and near to Cross street. The engine was a very large, 10-wheel engine, and the engineer could not see a man upon the track unless he was 100 feet ahead of the engine, and he did not see the plaintiff, who was evidently within less than 100 feet when the train started. The train was moving on an up grade of about 25 feet to the mile, and the fireman was engaged in shoveling coal into the firebox. The train stopped just long enough to permit passengers to get off and on, and to take off and put on baggage. It was the duty of the gate-keeper to lower these gates in time to warn travelers upon the highway of the approach of this train.

On leaving his work on the 1st day of March, 1901,

plaintiff locked the door of the power house, carrying two bundles, walked out onto Cross street, and diagonally across River street to the gatekeeper's house, which was located about 15 feet from the sidewalk, hung the key up inside, and started for home. The night was cold. He turned up his overcoat collar, pulled his cap over his ears, and started down and diagonally across the intersection of River and Cross streets to River street, his home being in that direction. He desired to reach the east side of River street. When at about the center of River street, he stepped over the north rail of the south track, was struck by the cowcatcher of the engine of the approaching passenger train, and was injured. The negligence charged is failure to ring the bell and lower the gates. Plaintiff recovered verdict and judgment.

The two defenses insisted upon by the defendant are that the gatekeeper was a fellow-servant with the plaintiff, and that the plaintiff was guilty of contributory negligence.

Plaintiff, on direct examination, testified as follows:

"I live on the south side of the railroad track. I had to cross the railroad track to go home from where I had been employed all day. This gate is on the north side of the track, and I started across the track, the gate being back from River street about 15 feet. I struck a little crosswise course across the street. I calculated to take the east side of River street down to the foundry. There is a little alley there, which I generally cut through, to get home quicker. It cuts off a little. This train was No. 10, going east. It usually stops about five minutes. It pulled in just as I was going across the street to leave the key, and as I went right on, minding my own business, going a little diagonally across the track there, about the center of River street, as near as I can remember, the cowcatcher struck me on the ankles and threw me up."

His testimony as to the gates was as follows:

" *Q.* At the time you were struck with the cars, state where the gates were.

"*A.* They were— I think they were up. They were up, I know, because, when I came across from the electric-light house, if the gate had been down, I would have to go around or crawl under it, and I did not do either.

"*Q.* When you came back from the gatehouse, going towards River street, crossing the railroad, where were the gates then?

"*A.* They were up then.

"*Q.* So, when the train struck you, the gates were where?

"*A.* They were up."

On cross-examination he testified:

"*Q.* At the time you left the power house, you saw the train there?

"*A.* Yes, sir.

"*Q.* The locomotive of the train?

"*A.* Yes, sir.  *   *   *

"*Q.* Would there have been any difficulty in your seeing this engine where you were?

"*A.* I don't think there would.

"*Q.* What was it?  One of the big engines?

"*A.* I think it was.

"*Q.* What did you have on that day,—a cap or a hat?

"*A.* I had a cap.

"*Q.* Did you have it pulled down over your ears?

"*A.* Yes, sir.

"*Q.* Do you think that interfered with your sense of hearing any?

"*A.* It might, a little.

"*Q.* Was it storming, or what was the weather?

"*A.* No; it was not storming.

"*Q.* It was simply cold?

"*A.* It was not so very cold; but I had been working inside long enough so I felt the changes of the weather when I went out.

"*Q.* Are you a little hard of hearing?

"*A.* I didn't know that I was.

"*Q.* There was a sidewalk, was there, on the south side of the railroad tracks, that you could have taken to go home?

"*A.* Yes, sir.

"*Q.* Why did you take the railroad track?

"*A.* I am telling you that I had to cross the railroad track to get on my side to get home, and I was crossing the track.  Just down by Ferrier's foundry there is an alley.  I used to go in across there to save a few rods.

"*Q.* Is it a shorter distance?

"*A.* Yes; a shorter distance.

" *Q.* Instead of going on the sidewalk, you went this way to shorten the distance?

"*A.* Yes; to shorten the distance. * * *

" *Q.* During this time, did you turn around any to see if the engine was coming?

"*A.* I remember, when I started across, seeing a friend of mine standing in front of the cigar store, and I started to walk fast, and I don't think I turned around after that.

" *Q.* Then you did not look around?

"*A.* I don't think I did. * * *

" *Q.* If you had turned around at any time you were walking down this track, you could have stepped one side and got out of the way?

"*A.* Yes, sir. * * *

" *Q.* Did you hear any exhaust of steam when the locomotive started?

"*A.* There was a freight engine up in the yard that was making a terrible racket, and I did not pay— I supposed it was the freight that I heard, if I remember right. No, sir; I did not hear it.

" *Q.* You did not hear any exhaust from the engine?

"*A.* No; I did not.

" *Q.* What you did hear, you supposed was the freight engine, farther up in the yard?

"*A.* Yes; farther up in the yard."

Shortly after the accident, plaintiff made a written statement, which he testified was correct, and which is as follows:

"On the afternoon of March 1st, about 5:10, I left the power house of the Washtenaw Electric-Light Company, southeast corner of River and Cross streets, where I was employed as fireman by the Michigan Central Railroad Company. Saw train No. 10 standing at depot when I stepped out of the door. Thought I had plenty of time to cross railroad tracks before train would pull out. Pulled my cap down over my ears, and turned up collar of my overcoat, and started over walk, and down River street. Crossed over side track and north main track, and was just about stepping over north rail of south main track when I was struck by engine of train No. 10, and thrown down, rolling me over several times. I heard no bell or warning whatever. I did not think I was badly hurt at the time. Left foot felt numb, as though asleep. Got up

and walked down the street as far as Congress street without help, where I found a man who took me home."

Plaintiff called one Grimson as a witness, who saw the accident. This witness testified that, when the accident actually occurred, the gates were down, but they were not down when plaintiff started across the track; that the train was nearly in the middle of Cross street when the gates came down. This witness was going across Cross street, west of the railroad crossing. He saw the plaintiff and the train. Witness was watching to see whether plaintiff was going to turn around and look. He undertook to "holler" to him, but the train was making so much noise that he could not hear, and he then started to run to him. It took about four seconds to lower the gates to a position where they were level with the ground.

*Lawrence & Butterfield* (*Ashley Pond* and *Henry Russel*, of counsel), for appellant.

*Lee N. Brown*, for appellee.

Grant, J. (*after stating the facts*). We think the plaintiff was clearly guilty of contributory negligence. He heard the noise made by the engine and the train. He must have heard the exhaust of the steam. He testified he supposed that these noises were caused by another engine, farther away in the defendant's yard. He had no right to rely upon this supposition. He knew that the train was standing there when he left the power house, that it stopped only long enough to accommodate travelers in getting off and on, and that it was liable to start up any moment. The noise alone, even though the bell was not rung, was a sufficient warning to him. It was his duty to both listen and look. A turn of the head, which would require but a fraction of a second, would have shown him the train coming in close proximity to him. Instead of doing this, he stepped across the rail onto the track directly in front of the engine, which was approaching only a few feet from him.

In *Brinker* v. *Railroad Co.*, 121 Mich. 283 (80 N. W. 28), where there were two roads running parallel and near each other, the plaintiff believed that the approaching train, the smoke of which he saw, was on the track farthest from him, and not upon the one which he was approaching. He was held guilty of contributory negligence. We said:

"It was his duty to stop and ascertain the road the train was on. * * * He was the master of his own movements, and slight precaution would have averted the accident."

It was equally the duty of the plaintiff in this case to stop, if necessary, and determine which train made the noise he heard. He was not safe if the noise came from the passenger train. He was safe if it came from the engine in the yard. A glance would have given him the necessary information. It was not dark. He testified that it was getting dusk, but admitted that there was no difficulty in seeing the engine and the train, and other objects around. A railroad track itself is notice of danger. This being so, it is the duty of every one attempting to cross to use ordinary precautions for his own safety. This plaintiff seeks to excuse the ordinary precaution to look by saying that he saw a friend, and he started to walk faster, and did not turn around to look, and that, if the gate towards which he was going had been lowered, he would have seen it. This case, in principle, is indentical with *Spaven* v. *Railway Co.*, 130 Mich. 579 (90 N. W. 325), and the language there used is equally applicable to the conduct of the plaintiff in this case.

Judgment reversed, and a new trial ordered.

The other Justices concurred.