## STORRS *v.* GRAND TRUNK WESTERN RAILWAY CO.

RAILROADS—INJURIES AT CROSSING—CONTRIBUTORY NEGLIGENCE.
Where, in an action against a railroad company for injuries at a crossing, it appears that plaintiff, with knowledge that construction work was being done on the railroad, approached a crossing in a cut and heard the whistle and saw the steam from an approaching engine, but without stopping to look or listen whipped up his horses and attempted to cross the track ahead of the train, and was injured, a verdict should be directed for defendant on the ground of contributory negligence, though the train was one of flat cars being pushed ahead of the engine.

Error to Eaton; Smith, J. Submitted December 6, 1905. (Docket No. 153.) Decided December 22, 1905.

Case by William Storrs against the Grand Trunk Western Railway Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Reversed.

*Harrison Geer*, for appellant.
*J. M. & J. L. Powers*, for appellee.

McALVAY, J.   Plaintiff brought suit against defendant to recover damages for injuries to himself and his team, wagon, and harness by reason of a collision between a construction train on defendant's road and plaintiff's wagon at a street crossing in the city of Charlotte.   He was acquainted with this crossing.   About 7 o'clock in the morning of the day in question he drove from his home, going to his work, and coming on to Munson street, when at least 70 feet from the railroad crossing, heard the whistle of an approaching train, looking he saw the steam rising over the embankment along defendant's right of way. On account of the embankment he could not see the oncoming train.   He thought the engine was about 80 rods down the track, and decided to pass across ahead of it. He struck his horses with the whip and went down to and upon defendant's track without stopping to look and listen to discover where the train really was.   When his horses stepped upon the track, he discovered that this engine was pushing a string of flat cars ahead of it, and that the first car was right upon him.   He jumped to save himself, and striking the frozen ground was injured in one hip. The wagon was demolished, the harness broken, and the horses injured.

Plaintiff was familiar with this crossing, having often passed over it.   He knew that defendant was at work putting in a double track east of the crossing, and that during the day construction trains passed here frequently, drawing gravel to the east, and, in going back west, the empty gravel cars were pushed ahead of the engine.   He says he did not expect the gravel train so early in the morning.   He thought it was a freight train coming up there.

On the trial it was claimed that the speed of the train at 10 to 12 miles an hour was contrary to the provisions of a city ordinance regulating the speed of trains within the city limits, and the court permitted the ordinance to be introduced subject to exception by defendant.   A request to direct a verdict for defendant on account of the con-

tributory negligence of the plaintiff was refused. This is the error relied upon by defendant; error assigned upon the admission of the ordinance having been waived upon argument.

The plaintiff testified as follows:

"I heard an approaching engine whistle and looked up and saw the steam of the engine over the bank. The engine was, I judge, 80 rods away when I first saw it. I could not see a thing of any train of flat cars. After observing the engine that distance—80 rods from me—I undertook to cross the track. I hadn't only about 60 or 70 feet to cross the track, and the locomotive, I supposed was drawing a freight up the grade. I thought I had plenty of time to cross the track. When I saw the engine, or the steam from the locomotive, I thought I had plenty of time to cross the track, and whipped my horses. They started on a trot, trotted right down·on the track before ever I see a thing. Just as they got right onto the track, so far that I couldn't stop, that train backed right down from behind the bank to my left. I couldn't see it until after I was right on the track. I don't think the rear of the rear flat car was over half of the length of the car from me when I first could see it. I threw off the lines and jumped. I thought that was my only salvation."

On cross-examination he said:

"It was a cloudy morning, about 7 o'clock standard time. I drove east on Amity street until I came out on Cochran avenue and crossed it to Munson street, and then tried to cross the railroad. Besides the embankment, there were some trees and houses—apple trees, for one thing. That was some 40 rods east of the depot.

" Q. Did you listen for any train?

"A. I didn't have to listen. I heard the train whistle. I had not been accustomed to crossing there so often as at several other places. I have crossed there several times. At that time the company was double tracking the railway somewhere along down there—not right there. I don't know how far east of there. I had been teaming right along around the town; I hadn't been so very much in the north part of town.

" Q. You knew they were running gravel trains or construction trains right along?

"A. I have seen them go through here; yes, sir.

" *Q.* You knew it was necessary for them to run back when they run down with a load—

"*A.* (interrupting). I didn't know anything about it. I have seen them run back and I have seen them run ahead.

" *Q.* You have seen them back up?

"*A.* Yes, sir.

" *Q.* You know they were accustomed doing that—going out and unloading and then backing up?

"*A.* It seems they was; yes.

" *Q.* You knew all about that?

"*A.* I have seen them, I said.

" *Q.* You knew they were running back and forth?

"*A.* Of course they were there.

" *Q.* That they were drawing gravel through town?

"*A.* They had to run backwards and forth.

" *Q.* There was no place where they put an engine ahead of it—where they run down and unloaded—you knew that?

"*A.* I didn't know anything about it, for I hadn't been on the road. They had to run backwards and forth.

" *Q.* You didn't stop before you went to cross the road?

"*A.* I didn't have to. I saw the train—was watching it; I saw the locomotive and was watching it. I couldn't see the cars behind the locomotive because of the bank. I saw the steam of the locomotive—not the locomotive itself at first. When I heard the whistle, I looked up that way. I could see the steam. I couldn't see anything else. I supposed it was a freight coming. I know right where it was. I heard it whistle. My team was on a walk when I first heard it, but I picked up my whip, hit them, and they started on a trot. I knew the train was coming west by the steam.

" *Q.* You knew the road was constructing its road there at that time, you knew the company was constructing the new road there?

"*A.* Yes, sir.

" *Q.* Yes; double-tracking its road?

"*A.* I couldn't help but.

" *Q.* They had been constructing right along there, had they not?

"*A.* No, sir; not that I ever noticed.

" *Q.* You knew they were graveling the road there?

"*A.* Not there they were not.

" *Q.* Hadn't you seen those loads of gravel go through here?

"*A.* Yes; but I don't know where the train went.

"*Q.* And turned back empty?

"*A.* Yes.

"*Q.* And you knew every time they run back after drawing a load of dirt, they run back with flat cars ahead of the engine?

"*A.* I have seen them run back that way.

"*Q.* You knew that was the way they did; you saw them unload the gravel down there?

"*A.* No, sir; I did not. I had seen train loads of gravel go through here and return empty. I have seen them run back with the flat cars ahead of the engine. I saw them going back and forth. I did not anticipate at that time that they might be running back, because it was early in the morning. I didn't see any gravel train. I didn't think there was any. I thought it was a freight train coming up there. It was so far off. I didn't think that I had to investigate it.

"*Q.* Didn't any one alarm you before you went on the track?

"*A.* No; not that I heard.

"*Q.* You can't see on the road?

"*A.* Not until you get on the track. I was sitting on the wagon seat. I watched for the engine, supposing it was a freight train. I looked for the train. I couldn't see anything but the engine until I drove right on the track; I saw the steam of it. I looked for it; was looking right at it, right that way.

"*Q.* When you got up in 20 feet of the track, did you look for the engine?

"*A.* I couldn't look for the engine in 20 feet of the track because this house stands there that hides the whole of it. You can't see when that was 20 feet from the track. It is not true that you can see down the track when 20 feet away from the track. I don't know how far that house stands back from the track.

"*Q.* If the house stood there, how did you happen to see the steam of the engine?

"*A.* I saw the steam of the engine before I come up to the house; that is, before the house come in range of me. I heard the engine whistle and saw the steam of it coming up there, just when I turned from Cochran avenue into Munson street. There is one house on the north side of Munson street, between Cochran avenue and the railroad. Cochran avenue is probably 60 or 70 feet from the track. I measured it once.

" *Q.* When was it you struck your team and put them on a trot ?

" *A.* Just as I heard the whistle. I had just turned my team in on Munson street. I made up my mind that I had plenty of time to cross the track before the engine got there. I heard no one trying to alarm me—to stop me. I did not listen for any one. The ground was frozen and my wagon making a noise. I looked all around and didn't see anybody. I did not stop, I drove right along, because I supposed I had plenty of time. When I kept my eye on the engine, I supposed I had plenty of time to cross the track. The house hid my view when I got against the house. I saw the smoke before I reached the house, and heard the whistle before I reached the house.

" *Q.* Did you see anybody on the train that day ?

" *A.* I did, sir. I was looking all the time at the steam of the engine; I couldn't see any cars from where I was. I was watching it, my horses on a trot. I heard nobody trying to stop me, and I saw nobody trying to stop me from going on the track; I saw nobody, and I heard nobody holler. I was watching the engine because I didn't want it to run onto me. I was watching to see how close they were coming to me before I got to the track.

" *Q.* Didn't you know that it would be possible for them to run a gravel train back there ?

" *A.* I didn't think anything about a gravel train. I didn't suppose it was necessary for a man to see a train coming for 80 or 100 rods to stop and look very much. I knew that at that place they were double tracking it. I looked all around on account of the double track. I looked around to see if there was a train coming from the other way. I didn't see nothing. My horses was on a slow trot.

" *The Court:* I do not understand there was a train coming from the other way.

" *The Witness:* No, sir; there was not. I was looking to see if there was."

Plaintiff heard the whistle. He saw the steam from the engine all the time he was approaching the track. He was familiar with the place. His view of the train was obstructed by the embankment. He did not stop and listen; but, thinking the engine was far enough away, he whipped his horses to hurry across. Plaintiff was not put in a place of danger by defendant. He had absolute

control of his own movements. Approaching the track after he heard the whistle and saw and continued to see the smoke, at a place where the train could not be seen, his testimony shows he did not take the slightest precaution to protect himself from the injuries he received. He was guilty of contributory negligence. *Shufelt* v. *Railroad Co.*, 96 Mich. 327. In this case it was held:

" These trains must run by cuts, by embankments, by trees, and other things. He who does not choose to stop and listen where he cannot see must suffer the consequences of his own negligence."

Also see *Brinker* v. *Railroad Co.*, 121 Mich. 283. Plaintiff's knowledge of the approaching train was a warning to him of the possible danger, and he had no right to make the attempt to cross the track ahead of the oncoming train without exercising the ordinary precautions for his own safety. *Graf* v. *Railway Co.*, 94 Mich. 579; *Korrady* v. *Railway Co.*, 131 Ind. 264; *Railroad Co.* v. *Houston*, 95 U. S. 702. Plaintiff knew that the train was upon this road and coming toward this crossing. The fact that he thought it was a freight train, and did not expect the construction train so early in the day, did not relieve him from stopping, as he had ample opportunity to do, for the purpose of ascertaining the actual situation confronting him, before he attempted to cross. *Boutell* v. *Railroad Co.*, 133 Mich. 486; *Brinker* v. *Railroad Co.*, supra.

There is no dispute in the case as to what the plaintiff saw and what he did just before and at the time of the accident. The dispute in the testimony as to where the lookout man stood on the rear of the backing train is, therefore, not material, as the case is determined upon the question of the plaintiff's contributory negligence. Plaintiff knew a train was approaching. He knew that the construction train sometimes backed over that crossing in going west. He says he thought this was a freight train. He could not see this train on account of the embankment. He had knowledge of its approach, and

.needed no other warning.   There is not in the evidence the slightest indication that he observed any precaution what-ever.   *Haas* v. *Railroad Co.*, 47 Mich. 401; *Lake Shore, etc., R. Co.* v. *Miller*, 25 Mich. 274.   The court should have instructed a verdict for defendant as requested.

The judgment is reversed, and a new trial ordered.

MOORE, C. J., and GRANT, BLAIR, and HOOKER, JJ., concurred.