DAVIS *v.* MICHIGAN CENTRAL RAILROAD CO.

1. RAILROADS—INJURIES AT CROSSINGS—NEGLIGENCE.
   To strike a caboose standing in the street, with an engine, and back it across a sidewalk without any warning, is negligence.

2. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
   Decedent, by stopping for a few seconds on a sidewalk where a railroad track crossed it, while a caboose was standing detached near by, was not guilty of negligence per se, so that recovery could not be had for his death caused by the backing of the caboose against him without warning, but the question is one for the jury.

Error to Bay; Shepard, J. Submitted December 7, 1905. (Docket No. 162.) Decided December 22, 1905.

Case by Noble Davis, administrator of the estate of Harry E. Davis, deceased, against the Michigan Central Railroad Company for the negligent killing of plaintiff's intestate. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Reversed.

Defendant's road runs northwesterly and southeasterly through the city of West Bay City. The streets of said city run north and south and east and west. State street, King street, and Litchfield street run north and south, of which State is the east street, King the center, and Litchfield the west. Mosher and Hart streets cross these at right angles; Mosher being the northern one. The defendant's road crosses King street a short distance north of the intersection of Hart and King. The block bounded by Litchfield, Hart, King, and Mosher streets is chiefly an open common. The deceased, a son of the plaintiff, lived with his parents on the west side of Litchfield street. The defendant's roadbed at this point consists of three tracks. King street is raised somewhat above the level of the surrounding ground; on the west side is a sidewalk.

On the day in question a caboose was left standing on the west track and in King street, about six feet from the sidewalk. The deceased, 23 years of age, started from his residence to exercise a sick dog. He went across the open common towards King street, calling the dog after him. He reached the sidewalk near the caboose. He turned to go north upon the sidewalk, and, when in front of the car, he stopped, turned with his back to the car, stooped over, patted his knee, and whistled for his dog, looking towards his home, whither his dog had gone. An engine, with another caboose attached, backed up against the standing caboose with such force that it struck the deceased, rolled him under the car, and injured him so that he died the next day. The car passed entirely over him, and he was removed from under the northern trucks of the second car. Only one witness, the mother of the deceased, saw the accident. Two others saw him upon the sidewalk in front of the caboose just before the accident, but were not looking at the time it occurred. Mrs. Davis described what happened as follows:

" When decedent left the house at 5:30, witness was standing at the window, when he first started out of the house, talking to him. That the porch is on the south

side of the house, and comes within four feet of the front,
and within seven or eight feet of the sidewalk on Litch-
field street. That, when decedent went out of the house,
he crossed Litchfield street, and took the path in the
vacant lot crossing the field to King street, and while he
was walking across the field, he stopped two or three
times and was calling his dog, and the dog refused to go
with him, and came back home, and, when it came back
towards the house, witness stepped outside onto the porch,
and decedent walked on, thinking the dog was following
him, and when he got behind Mr. Smith's little barn,
going straight to King street, he missed his dog again,
and turned to the left to King street, and had gotten
across the track. He got to King street, striking it pretty
near in front of Mr. Smith's house. That the dog had
come back again part way across the field, and decedent
walked up onto the sidewalk and spoke to his dog again,
and then he walked a little farther on, and witness was
telling the dog to go to him, saying, 'Sport, don't you see
Harry?' and decedent called again, and stopped and
looked towards State street, or in that direction. That he
then looked back toward witness on the sidewalk, took a
few more steps, and he was up onto the crossing, and a
few minutes after, a second later, he was on the sidewalk,
and he stood there. That the building that he disappeared
behind was a water-closet and a little woodshed, being an
outbuilding to Mr. Smith's residence, about eight or ten
feet in height, with the roof slanting toward witness.

" Q. When he [decedent] first went to the railroad
track, before he went onto the track, did you see which
way he looked ?

" A. He was standing looking down toward State street
for a few seconds.

" Q. Then what did he do ?

" A. Then he turned toward me again and looked.

" Q. Did he walk toward home just a few steps ?

" A. He had his face toward me.

" Q. What did he do then ?

" A. Then he stepped up onto the sidewalk further on,
and stooped over, turned around with his back to the car,
and homeward again toward the west, and was stooped a
little over, hitting his knees and whistling again, and the
next thing I looked and the car was coming on him and
struck him, and he fell on his face in the center, I should
judge, or to the right of, the coupling. I wouldn't say

just, but about that—to the right side of the track, this side toward my place. He fell on his face and on his knees, his knees and face. *   *   *

"Q. How long did he stand on the track after he went out onto it and turned—how long before the car started?

"A. It was not any time hardly. I couldn't say, but it wasn't long.

"Q. Can you estimate it in seconds or fractions of a minute, or by the time of the clock?

"A. It couldn't be much over seven or eight or ten seconds."

Just after the accident two men were seen emerging from the north end of the caboose attached to the engine. When the plaintiff rested her case, the court directed a verdict for the defendant, holding that the deceased was guilty of contributory negligence.

*De Vere Hall* (*Gilbert W. Hand*, of counsel), for appellant.

*Cooley & Hewitt*, for appellee.

GRANT, J. (*after stating the facts*). That the action of the defendant in striking this car and backing it across the sidewalk without any warning was negligence is established by many authorities, and is founded upon reason and common sense. In *McWilliams* v. *Mills Co.*, 31 Mich. 274, it was held that a passenger on a sidewalk of a public highway had a right to expect a warning before the sudden movement of a car which had been standing still. *Cooper* v. *Railway Co.*, 66 Mich. 261; *Lehman* v. *Steel Works*, 114 Mich. 260; 2 Thompson on Law of Negligence, §§ 1571, 1594.

The question of contributory negligence should have been submitted to the jury. There was evidence that plaintiff, standing upon the sidewalk before stepping upon the track, looked to the east. If the engine, with the tender and car attached, was then approaching and within his view, he was guilty of contributory negligence in stopping in front of the caboose. If, however, he saw no sign

of the approaching cars, he was not, as a matter of law, guilty of contributory negligence. A passenger is not required by the law to hurry across a track in front of a car standing detached in a public highway, with nothing in his sight to indicate its immediate movement, and no employé present to warn him of an intended movement. A delay of a few seconds to turn and call his dog, or a delay for a little time when acquaintances meet upon a sidewalk to talk, is not per se negligence under such circumstances. Parties have the right to assume that the railway company will give them warning at such places before moving the car in their direction. It is a duty which such companies owe to the traveling public, and when travelers, for a legitimate purpose, stop on the sidewalk for a few seconds, it does not follow that they are ipso facto guilty of negligence. 2 Thompson on Law of Negligence, § 1472.

Judgment reversed, and new trial ordered.

MOORE, C. J., and MCALVAY, BLAIR, and HOOKER, JJ., concurred.