BEAGLE *v.* PERE MARQUETTE RAILROAD CO.

1. RAILROADS—CONTRIBUTORY NEGLIGENCE—PERSONAL INJURIES—
CROSSINGS—DUTY TO LOOK AND LISTEN.

Plaintiff was a woman 64 years of age who had resided
immediately adjoining defendant's track near a crossing.
She was familiar with the crossing and custom of the
trains which passed there. A freight engine usually de-
tached itself from its train and stood near the crossing
until one of defendant's passenger trains had passed,
about the middle of the day. Approaching the crossing
while the passenger train stood upon and across it, she
received a signal from the fireman of the freight engine
to pass across the track in front of the standing engine.
As she did so, she perceived a passenger on the train
that was just starting on the main track making some
signal which she misinterpreted and stepped backward
in front of the engine which plaintiff claimed started to
move without ringing the bell or signaling. She failed
to look and did not observe that the engine had started
and was struck by it. *Held*, that it was the plaintiff's
duty to observe the surrounding situation before she re-
turned upon the track which she had crossed and that
her contributory negligence barred a recovery.[1]

2. SAME—GENERAL RULE.

Before a pedestrian is entitled to enter upon a railroad
track or similar place of danger, or attempts to remain
upon the track, it is his duty to assure himself that it
is safe so to do, and failure to take this necessary pre-
caution is contributory negligence *per se.*

KUHN, BIRD, and MOORE, JJ., dissenting.

Error to Genesee; Wisner, J.   Submitted June 12,
1914.   (Docket No. 39.)   Decided January 4, 1915.
Rehearing denied April 28, 1915.

[1] On the question whether the failure to give customary signals
at a railroad crossing excuses the nonperformance of the duty
to look and listen, see note in 3 L. R. A. (N. S.) 391.

Case by May Beagle against the Pere Marquette Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Bills, Parker, Shields & Brown* (*Carton, Bray & Stewart,* of counsel), for appellant.

*Henry R. Rathbone* and *Homer J. McBride,* for appellee.

BROOKE, C. J. The following facts are undisputed on this record: The plaintiff, a woman in the prime of life and in the full possession of all her faculties, had lived immediately adjoining the crossing at which she was injured for .a period of a year and a half. She was familiar with the crossing and had occasion to use it with great frequency. She knew the number of tracks crossing the street at that point and their uses. The accident occurred in the middle of the day, and therefore in broad daylight. She knew that the freight engine, which had detached itself from its train and stood upon the crossing a few feet (she says 10) south of the sidewalk upon which she was proceeding must wait in that position until the south-bound passenger train had cleared the main track. Her intimate knowledge of the movements of the passenger train and the engine are indicated by the following testimony:

"*Q.* You would frequently see trains, a freight train, pull in on the side track, the same as this one did?

"*A.* Yes, sir; I have.

"*Q.* At this time of day?

"*A.* Yes, sir.

"*Q.* You have seen the engine come up near Second street and stop?

"*A.* Yes, sir.

"*Q.* That would be right opposite your window, wouldn't it?

"*A.* Yes, sir.

"*Q.* And wait for that passenger train to go by?

"*A.* A great many times.

"*Q.* A great many times?

"*A.* Yes, sir.

"*Q.* This same passenger train you speak of you saw on this day?

"*A.* That 1:05 train.

"*Q.* Then the engine would go up on the side track and over onto the main line and take water?

"*A.* Yes, sir.

"*Q.* Then get back and couple on its train and go on?

"*A.* Yes, sir.

"*Q.* And that happened up there on this 1:05 train time, it would always stand there until the 1:05 train cleared on the main track?

"*A.* Yes, sir.

"*Q.* That was the regular movement of trains there?

"*A.* Yes, sir.

"*Q.* You knew, also, that when the 1:05 passenger train pulled by the crossing this engine always started up?

"*A.* Always."

The south-bound passenger train stood at the station and obstructed her passage over the main, or easterly, track. Approaching from the west, she crossed the side track and drew near to the passing track upon which the engine, which had been detached from the freight train, stood a little south of the walk she was traversing. The distance between the side track and the passing track is 19 feet. The distance between the passing track and the main track, upon which the passenger train stood, is 31 feet. Nearing the engine, she testifies that she received a signal from the fireman inviting her to cross in front of the engine which was not in motion. This she started to do, and had nearly crossed the track, which is only 4 feet 8½ inches wide, when, according to her testimony, she noticed a person on the passenger train,

which was pulling out, make a motion. This motion she describes clearly as a beckoning motion. But instead of stepping forward in obedience to the motion, through some misinterpretation, she stepped backward and remained standing an instant or two upon the passing track immediately in front of the engine. She testifies clearly that had she continued going forward, instead of stepping backwards, she would have reached a place of safety on the strip 31 feet wide between the two tracks. She testifies equally clearly that she stepped back upon the passing track and in front of the engine without looking to see whether or not the engine remained stationary. In order to clearly demonstrate this statement of fact, I subjoin an excerpt from her testimony given on cross-examination:

"*Q.* You knew this engine or this passenger train could not strike you unless you were on the track, didn't you, Mrs. Beagle?

"*A.* No answer.

"*Q.* What; didn't you know that?

"*A.* Why, I knew it; yes, sir.

"*Q.* You knew if you went across the second track, between that and the third track, that you would be in a place of perfect safety, didn't you?

"*A.* I did not think of it.

"*Q.* Weren't thinking of your safety at that time?

"*A.* Why, certainly I was thinking of my safety; that is why I went across when the fireman motioned to go across. I thought he was placing me in a place of safety.

"*Q.* What say?

"*A.* I supposed he was placing me in a place of safety.

"*Q.* You knew where a safe place was without his telling you?

"*A.* I had not time to get clear over when I was motioned to step back again.

"*Q.* Why not? Well, you did stop and step back?

"*A.* Certainly, on the second crossroad there.

"*Q.* Now, you knew, did you not, that right in front of you, if you had continued going ahead instead of stepping back there, that the place was perfectly safe for you?

"*A.* Yes, if I went ahead.

"*Q.* You knew that?

"*A.* Yes.

"*Q.* Now, you appreciated it at the time?

"*A.* Yes, but I thought you meant—

"*Q.* Yes?

"*Mr. Rathbone:* I want her to complete her answer. I submit the witness is entitled to finish. What was that, Mrs. Beagle?

"*Q.* Meant what?

"*A.* Meant the motion I got from the passenger train I was to step back, go back or something, some danger or something I did not know what; that is all I know about it.

"*Q.* You knew that right in front of you, did you, there was no danger?

"*A.* Well, I did not know what it meant. If I had I would not have stepped back into danger; I was not there for that purpose.

"*Q.* I appreciate that, but, Mrs. Beagle, didn't you know where a safe place was on that crossing at that time?

"*A.* If I had got over on that side—

"*Q.* Answer my question.

"*A.* Yes, that would be a safe place.

"*Q.* You knew it at the time, didn't you?

"*A.* Yes, I knew it at the time.

"*Q.* That answers the question. We have finally got that settled. Then if you had gone into a place that you knew was safe you would not have been injured, would you?

"*A.* No, if I went over there.

"*Q.* And the fireman had nothing to do with your stopping the second time, did he?

"*A.* Not the second time.

"*Q.* What?

"*A.* No, I could not say as he did.

"*Q.* And you were going to step into a place of safety?

"*A.* Yes, sir.

"*Q.* Had plenty of time to do it, did you not?

"*A.* Yes, sir; if I proceeded.

"*Q.* Yes, yes, if you proceeded, that is right.

"*A.* No answer.

"*Q.* Instead of that, you misinterpreted the warning that was given you by somebody on the passenger train?

"*A.* Yes, sir.

"*Q.* Now, this was broad daylight?

"*A.* Yes, sir.

"*Q.* Nothing to prevent your seeing this engine move towards you if you had looked any time?

"*A.* If I looked any time?

"*Q.* What?

"*A.* When I looked up it was coming onto me.

"*Q.* There was nothing to have prevented you from seeing it if you had looked any time, was there?

"*A.* No.

"*Q.* No. You knew that as soon as that passenger train came along that that engine was going to start up?

"*Mr. Rathbone:* I object to it as having been asked and answered a good many times already, if the court please.

"*The Court:* I think it has been asked once or twice.

"*Mr. Bray:* I am asking it in a different connection, that is all.

"*The Court:* Very well, she may answer it.

"*Q.* Repeated.

"*A.* I did not think anything about its starting right away.

"*Q.* You have not answered the question. I would like to have you answer the question.

"*A.* I didn't know it would start right away.

"*Q.* You had seen it a great many times do that same thing, have you not?

"*A.* Not exactly the same thing.

"*Q.* But you knew it was standing there waiting for the passenger to clear the track?

"*A.* Certainly I did.

"*Q.* You knew it was going to start up some time very close to the time that that passenger train went by?

"*A.* I did not know how close; I presume it would start up because it was uncoupled.

"*Q.* You knew it was there for the purpose of waiting for that passenger train to clear the track?

"*A.* Yes, sir; I did."

From these facts it appears conclusively that, assuming the direction of the fireman to have been given as claimed by her, she was not led into a position of danger thereby. Had she followed the instruction, she would have had ample time to reach a place of safety. Her failure to leave the track as she might have done, without haste, in obedience to that instruction, or her re-entry upon it without assuring herself that it was safe to do so, I believe, under the decisions of this court, were such acts as to compel us to say that she was guilty of contributory negligence as a matter of law. In taking the one or two steps backward as she said she did, and remaining standing upon the track without assuring herself that it was safe to do so, she certainly failed to use the most ordinary and necessary precaution for her own safety. The decisions of this court are very numerous to the effect that entering or remaining upon a railway track in a place of known danger, without first assuring oneself that it is safe to do so, is negligence as a matter of law. The question of defendant's negligence is therefore, in my opinion, unimportant. Whether the bell was rung or not, it would still be plaintiff's duty to use reasonable care for the protection of her own life and limb, and the warning which the ringing of the bell would have conveyed to her was one which she already had in the knowledge that the engine would start up immediately after the passenger train pulled out, and it appears to have been in motion before she was struck. The language used by this court in the case of *Boutell* v. *Railroad Co.*, 133 Mich. 486 (95 N. W. 568), is peculiarly pertinent:

"He knew that the train was standing there when he left the power house, that it stopped only long enough to accommodate travelers in getting off and on, and that it was liable to start up any moment. The noise alone, even though the bell was not rung, was a sufficient warning to him. It was his duty to both listen and look. A turn of the head, which would require but a fraction of a second, would have shown him the train coming in close proximity to him. Instead of doing this, he stepped across the rail onto the track directly in front of the engine, which was approaching only a few feet from him. * * * A railroad track itself is notice of danger. This being so, it is the duty of every one attempting to cross to use ordinary precautions for his own safety."

See, also, *Brinker* v. *Railroad Co.*, 121 Mich. 283 (80 N. W. 28) ; and *Spaven* v. *Railroad Co.*, 130 Mich. 579 (90 N. W. 325).

It is said that the plaintiff had the right to rely upon the custom of the defendant to ring the bell. The exact effect of the defendant's negligence upon the duty of the plaintiff in the premises is well pointed out in *Ellis* v. *Railroad Co.*, 169 Mass. 600 (48 N. E. 839), where it is said:

"While the raising of the gates justified the plaintiff in attempting to cross when he did, and while that fact, and the facts that no whistle was sounded and no bell was rung, are to be taken into consideration on the question of how much he must himself look and observe as he makes his way across, these circumstances do not excuse him from looking and listening and taking thought for his own safety. He cannot rely wholly upon them, and cannot recover without showing more, as to his own conduct, than that he so relied. * * * We are of opinion that, as matter of law, there was no evidence from which it could be found that the plaintiff himself exercised due care, and the verdict for defendant was rightly ordered."

I am of opinion that the motion made by defendant

for a directed verdict on the ground that plaintiff was guilty of contributory negligence as a matter of law should have been granted.

The judgment should be reversed, and a new trial granted.

MCALVAY, STONE, OSTRANDER, and STEERE, JJ., concurred with BROOKE, C. J.

KUHN, J. (*dissenting*). This is an action for injuries received in a railway crossing accident in the city of Flint at the intersection of Second street with the defendant's line of railway. At this point there are three tracks, the one farthest to the east being the main track, the one in the middle, about 24 feet distant, being the one on which the accident occurred.

On December 2, 1911, at about 1 o'clock p. m., a freight engine was standing across Second street on the middle track, its pilot about 10 feet south of the sidewalk on the north side of Second street, waiting for the regular passenger train to pass so that it might go over to the main track and take water. The plaintiff, who lives near the crossing and had crossed the tracks there many times, was going along Second street and walked onto the track on which the engine stood. It is her claim, supported by her testimony, that the fireman on this engine motioned for her to go ahead, and that as she was crossing the track some one on the passenger train, which was just then passing on the main track, motioned to her. Interpreting this as a warning, she stopped and stepped back, then looked around and saw the freight engine moving toward her, without ringing a bell or giving any other warning, and almost upon her, and before she could get clear of the track her left foot was caught and severed. It is further her claim, supported by testimony of other witnesses, that it was the custom of

the defendant for many years to ring bells on its engines standing on or close to Second street before starting, to warn persons who were passing in front of such engines, and that she knew of this custom and relied upon it on this occasion in crossing as she did.

The case being submitted to a jury, a verdict in the sum of $14,000 was found for the plaintiff, and judgment was entered thereon. A motion for a new trial made by defendant was refused. The case being removed to this court by writ of error, 164 assignments of error are urged. The following are the reasons urged by defendant's counsel for a reversal of the case:

"(1) The plaintiff was guilty of contributory negligence as a matter of law.

"(2) The variance between the pleadings and the proofs.

"(3) The negligence of the defendant, if any, was not the proximate cause of the accident.

"(4) If the defendant was guilty of any negligence, the plaintiff was guilty of concurrent negligence which contributed to her injuries.

"(5) The verdict was against the weight of the evidence.

"(6) The verdict was excessive.

"(7) The suit was prosecuted in violation of the law.

"(8) The court erred in the charge as given.

"(9) The court erred in the admission and exclusion of testimony.

"(10) The improper argument of plaintiff's counsel to the jury."

The principal question argued in the briefs is whether the plaintiff was guilty of contributory negligence as a matter of law. It is claimed by defendant and testified to by witnesses that she stopped on the track and waited there for the passenger train to pass, and in doing this that she selected a dangerous position when there was sufficient room for her to have

stopped on either side of the track; and also that she knew from experience that the engine would start up when the passenger train went by.

The question of plaintiff's contributory negligence, under the decisions of this court, should be submitted to the jury when the testimony is conflicting, or when candid and intelligent men might reach different conclusions upon the question. *Becker* v. *Railway Co.,* 121 Mich. 580 (80 N. W. 581) ; *Haines* v. *Railway Co.,* 129 Mich. 475 (89 N. W. 349) ; *Welch* v. *Railroad Co.,* 147 Mich. 207 (110 N. W. 1069) ; *Amanta* v. *Railroad Co.,* 177 Mich. 280 (143 N. W. 76). See, also, *Atchison, etc., R. Co.* v. *Wilkie,* 77 Kan. 791 (90 Pac. 775, 11 L. R. A. [N. S.] 963, and note, 127 Am. St. Rep. 464, 15 Am. & Eng. Ann. Cas. 731), and *Monroe* v. *Railway Co.,* 129 Mich. 309 (88 N. W. 888).

The testimony of the plaintiff was that, relying upon the custom of the defendant to give warning, and because of the invitation from defendant's fireman to cross, she thought it was safe for her to do so.. Whether she was justified in relying upon this custom, in view of her admitted knowledge that the freight engine usually started up at about the time the passenger train went by, it seems to us to be a question for the jury. Whether or not her act in crossing was that of an ordinarily prudent person, under all the circumstances, was a question for them to determine.

In *McWilliams* v. *Mills Co.,* 31 Mich. 274, it was said, in a case not dissimilar to the instant case:

"A passenger along the sidewalk of a public street has a right to expect some warning before any sudden movement of this kind, and there should be very plain proof of negligence to bind him under such circumstances."

And in *Davis* v. *Railroad Co.,* 142 Mich. 382 (105 N. W. 877), where the deceased stood on the track

with his back to a standing caboose for several seconds before it was backed down upon him without warning, and the trial court directed a verdict on the ground of contributory negligence, the judgment was reversed on the ground that the question of contributory negligence should have been submitted to the jury. The court said:

"A passenger is not required by the law to hurry across a track in front of a car standing detached in a public highway, with nothing in his sight to indicate its immediate movement. * * * A delay for a little time, when acquaintances meet upon a sidewalk, to talk, is not *per se* negligence under such circumstances. Parties have the right to assume that the railway company will give them warning at such places before moving the car in their direction."

Error is assigned because of the refusal of the trial judge to allow the defendant to amend its plea as provided in section 1139, 1 Comp. Laws (5 How. Stat. [2d Ed.] § 12557), so that it might be shown that the demand upon which this action was founded had been bought and sold or received for prosecution contrary to law, and in violation of the statute (section 1136, 1 Comp. Laws [5 How. Stat. (2d Ed.) § 12554]). It is claimed that plaintiff's attorney and the plaintiff made an agreement by which the attorney was to advance funds for the purpose of carrying on the litigation, and that this practice is a species of champerty and therefore illegal. This question is decided adversely to defendant's contention in the recent case of *Lehman* v. *Geer*, 180 Mich. 362 (147 N. W. 628).

A reading of this record does not convince us that the verdict is so against the overwhelming weight of the evidence as to warrant us in overruling the decision of the trial judge in refusing a new trial on that ground. See *Gardiner* v. *Courtright*, 165 Mich. 54 (130 N. W. 322), and cases cited therein.

We are not impressed that the verdict was excessive. The plaintiff, of the age of 44 years, prior to the accident, was a healthy and strong woman, doing the housework for a family of six. After the accident her left leg was amputated four or five inches above the knee. She was in the hospital ten weeks, where she was operated on three times. She has suffered great pain, and at the time of the trial she was still suffering pain, and was unable to wear an artificial limb because of her inability to control it. She is able to do but little housework, and has become a nervous woman, having difficulty in sleeping.

In the case of *Fike* v. *Railroad Co.*, 174 Mich. 167 (140 N. W. 592), where a verdict of $25,000 was reduced by this court to $17,000, the plaintiff lost her left foot, the amputation being above the ankle, and her left arm was amputated about the middle third, and there was a scalp wound and shock to the nervous system. Adopting the rule announced in that case, that it is the object of the law to compensate the plaintiff for all the injury sustained and not to provide the plaintiff with a competency or fortune, considering the permanent crippled condition of the plaintiff, her great suffering in mind and body, the destruction of her ability to labor, we are not prepared to say that the verdict in the instant case should be disturbed on the ground of its being excessive.

The other claims of error relied upon by defendant have had our careful consideration. We are satisfied that the case was submitted to the jury in a proper charge, clearly outlining the questions in issue, and that no prejudicial error was committed on the trial in the rulings of the court or argument of counsel.

The judgment should be affirmed.

BIRD and MOORE, JJ., concurred with KUHN, J.